Slip Op. 20-94

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE NAVIGATOR COMPANY, S.A., | |
| Plaintiff, | |
| PACKAGING CORPORATION OF AMERICA, ET AL., | |
| Consolidated Plaintiffs, | |
| and | |
| DOMTAR CORPORATION, | |
| Plaintiff-Intervenor, | Before: Mark A. Barnett, Judge |
| v. | Consol. Court No. 18-00192 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| PACKAGING CORPORATION OF AMERICA, ET AL., | |
| Defendant-Intervenors. | |

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's final results of redetermination in the first administrative review of the antidumping duty order on certain uncoated paper from Portugal.]

Dated: July 7, 2020

<u>Jonathan M. Zielinski</u>, <u>Thomas M. Beline</u>, and <u>James E. Ransdell</u>, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Plaintiff/Defendant-Intervenor The Navigator Company, S.A.

<u>Geert De Prest</u> and <u>William A. Fennell,</u> Schagrin Associates, of Washington, DC, for Plaintiff/Defendant-Intervenor Packaging Corporation of America, et al.

<u>Stephen J. Orava</u> and <u>Daniel L. Schneiderman</u>, King & Spalding LLP, of Washington, DC, for Plaintiff-Intervenor Domtar Corporation.

<u>Michael D. Snyder</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With him on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K.  Hogan</u>, Assistant Director.  Of counsel on the brief was <u>Mykhaylo A. Gryzlov</u>, Senior Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Barnett, Judge: This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") redetermination upon court-ordered remand.  *See* Final Results of Remand Redetermination, ECF No. 97 ("Remand Results").  Commerce issued its Remand Results in response to the court's disposition of separate challenges to the final results and amended final results of the first administrative review of the antidumping duty order on certain uncoated paper from Portugal.[1]  *See The Navigator Co., S.A. v. United States*, 43 CIT ___, 415 F. Supp. 3d 1278 (2019);[2] *Certain Uncoated Paper From Portugal*, 83 Fed. Reg. 39,982 (Dep't Commerce Aug. 13, 2018) (final results of antidumping duty admin. review; 2015–2017) ("*Final Results*"), ECF No. 33-2, and accompanying Issues and Decision Mem., A-471-

---

[1] The administrative record associated with the remand results is contained in a Public Remand Record ("PRR"), ECF No. 98-1, and a Confidential Remand Record ("CRR"), ECF No. 98-2.  Parties submitted public and confidential joint appendices containing record documents cited in their remand comments. *See* Public J.A. (Remand) ("RPJA"), ECF No. 107; Confidential J.A. (Remand) ("RCJA"), ECF No. 106. The court references the confidential version of the relevant record documents, unless otherwise specified.
[2] *Navigator* presents additional background on this case, familiarity with which is presumed.

807 (Aug. 6, 2018) ("I&D Mem."), ECF No. 33-3; *Certain Uncoated Paper From Portugal*, 83 Fed. Reg. 52,810 (Dep't Commerce Oct. 18, 2018) ([am.] final results of antidumping duty admin. review; 2015–2017) ("*Amended Final Results*"), ECF No. 33-1, and accompanying Confidential Ministerial Error Mem. (Oct. 9, 2018), ECF No. 65-1.

Consolidated Plaintiffs and Plaintiff-Intervenor (collectively, "Petitioners")[3] challenged Commerce's *Amended Final Results* as making a substantive change to the *Final Results* rather than correcting a purely ministerial error.  Confidential Mem. of Law in Supp. of Rule 56.2 Mot. of Consol. Pls. Packaging Corp. of America and USW and Pl.-Int. Domtar Corp. for J. on the Agency R., ECF No. 48.  Plaintiff, The Navigator Company, S.A. ("Navigator"), asserted a contingent challenge to the *Final Results*, arguing that Commerce erred in using the facts otherwise available, with or without an adverse inference.  The Navigator Co.'s Mot. for J. on the Agency R. ("Navigator's 56.2 Mot."), ECF No. 50. [4]

With respect to Petitioners' challenge to the *Amended Final Results*, the court held that Commerce made an impermissible substantive modification when it amended the *Final Results* and did not, as the agency asserted, correct an inadvertent clerical error.  *Navigator*, 415 F. Supp. 3d at 1286–88.  With respect to Navigator's challenge to the *Final Results*, the court held that Commerce permissibly used the facts otherwise

---

[3] Petitioners consist of Packaging Corporation of America; United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC; and Domtar Corporation.
[4] Navigator stated that it "would waive its right to pursue its challenge" if Petitioners did not prevail in their challenge to the *Amended Final Results*.  Navigator's Mot. at 3.

available, but the agency's decision to use an adverse inference in selecting from among the facts otherwise available (referred to as "adverse facts available" or "AFA") was unsupported by substantial evidence.  *Id.* at 1290–92.

In the administrative proceeding underlying the *Final Results*, Commerce rejected Navigator's *allocated* U.S. brokerage and handling expenses (reported in the field USBROK2U) as anomalous while accepting Navigator's *actual* expenses (reported in the field USBROKU).  I&D Mem. at 6–8.  Commerce further found that an adverse inference was merited because Navigator failed to demonstrate "that its allocation methodology . . . [did] not cause inaccuracies or distortions."  I&D Mem. at 8. Commerce selected the highest reported allocated U.S. brokerage and handling expense as partial AFA for Navigator's allocated expenses, which resulted in a weighted-average dumping margin of 37.34 percent.  *Id.*; *see also Final Results*, 83 Fed. Reg. at 39,983.

Upon review, the court held that "Commerce's stated basis for making an adverse inference was the very same basis that justified Commerce's use of the facts available—that Navigator failed to establish that its allocation was non-distortive." *Navigator*, 415 F. Supp. 3d at 1292.  Thus, the court remanded the determination for Commerce to "either select a neutral value to use as facts available or provide an explanation addressing how Navigator failed to act to the best of its ability that is distinct from Commerce's basis for using facts available."  *Id*.

On January 24, 2020, Commerce issued the draft results of redetermination to interested parties.  Draft Results of Remand Redetermination (Jan. 24, 2020) ("Draft

Results"), PRR 107, RPJA Tab 1.  Therein, Commerce explained that it "selected a

neutral facts available value for allocated brokerage expenses by calculating the

weighted-average of all positive USBROK2U values reported for the [period of review

("POR")]."  *Id.* at 2; *see also id.* at 4 (explaining that Commerce adjusted the reported

USBROK2U expenses by removing all zero and negative values).  Petitioners submitted

comments on the Draft Results in which they argued, *inter alia*, that Commerce should

continue to apply an adverse inference instead of applying neutral facts available.

Pet'rs' Cmts. on the Draft Results of Redetermination Pursuant to Court Remand (Jan.

30, 2020) ("Pet'rs' Draft Cmts.") at 1–7, CRR 5, PRR 3, CRJA Tab 3.

On February 19, 2020, Commerce issued its Remand Results and submitted

them to the court.  The Remand Results remained substantively the same as the Draft

Results.  *See* Remand Results at 5.  Commerce's use of neutral facts available resulted

in an amended weighted-average dumping margin of 1.63 percent for Navigator.  *Id.*

Petitioners oppose the Remand Results.  Confidential Remand Cmts. of [Consol.

Pls.] and Pl.-Int. Domtar Corp. ("Pet'rs' Opp'n Cmts."), ECF No. 100.  Petitioners argue

that Commerce's uniform substitution of the purportedly neutral allocated brokerage

expense value, including its use for transactions for which the original value was higher

than the neutral value, introduced distortions and was effectively non-neutral because it

reduced Navigator's allocated brokerage expenses and, thus, Navigator's dumping

margin.  *Id.* at 3–4.  For this reason, Petitioners argue that Commerce's Remand

Results lack a "rational connection between the facts of record and the agency's

characterization" of its determination as applying neutral facts available.  *Id.* at 4 (citing

*Motor Vehicle Mfrs. Assn. of United States Inc. v. State Farm Mut. Automobile Ins. Co.* 463 U.S. 29, 51–52 (1983)).

Defendant, United States ("the Government"), and Navigator support Commerce's Remand Results.  Def.'s Resp. to Cmts. Regarding the Remand Redetermination ("Def.'s Reply Cmts."), ECF No. 102; The Navigator Co.'s Responsive Cmts. in Supp. of the Agency's Remand Determination ("Navigator's Reply Cmts."), ECF No. 103.  The Government argues that Petitioners have failed to administratively exhaust their argument, which otherwise fails on its merits.  Def.'s Reply Cmts. at 4–10. Navigator argues that Commerce's selection and application of neutral facts available is reasonable and supported by substantial evidence, whereas Petitioners' proposed methodology is inherently adverse.  Navigator's Reply Cmts. at 2–6.

For the reasons discussed below, the court sustains Commerce's Remand Results.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[5] and 28 U.S.C § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law 19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed for compliance with the

---

[5] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2012 edition.

court's remand order."  *SolarWorld Ams., Inc. v. United States*, 41 CIT ___, ___, 273 F.

Supp. 3d 1314, 1317 (2017) (citation and internal quotation marks omitted).

DISCUSSION

Petitioners oppose Commerce's uniform application of its neutral facts available

value for the allocated U.S. brokerage and handling expenses.  Pet'rs' Opp'n Cmts. at

3–4.  The court first addresses whether Petitioners adequately exhausted this argument

before the agency and then turns briefly to the merits.

## I.  Exhaustion of Administrative Remedies

### A.  Legal Framework

"[T]he Court of International Trade shall, where appropriate, require the

exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  While exhaustion is not

jurisdictional, *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353,

1363–64 (Fed. Cir. 2019), the statute "indicates a congressional intent that, absent a

*strong* contrary reason, the [CIT] should insist that parties exhaust their remedies before

the pertinent administrative agencies," *id.* at 1362 (quoting *Boomerang Tube LLC v.*

*United States*, 856 F.3d 908, 912 (Fed. Cir. 2017)) (alteration original) (emphasis

added).  Failure to present an argument on remand generally precludes parties from

raising that argument before the court.  *Mittal Steel Point Lisas Ltd. v. United States*,

548 F.3d 1375, 1383–84 (Fed. Cir. 2008).  There are exceptions to the exhaustion

requirement, such as when "the party had no opportunity to raise the issue before the

agency."  *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1374 (Fed. Cir. 2014)

(citation omitted).[6]

### B.  Petitioners Failed to Exhaust their Administrative Remedies

During the remand proceeding, Petitioners argued that Commerce should

continue to apply an adverse inference as it had done for the *Final Results* or select a

different adverse value from the non-aberrational values reported in USBROK2U.

Pet'rs' Draft Cmts. at 6–7.  Before the court, however, Petitioners have abandoned that

argument and instead challenge Commerce's methodology for applying neutral facts

available.  Pet'rs' Opp'n Cmts. at 2.  Specifically, Petitioners argue that Commerce

should only apply the neutral facts available value to those transactions for which the

reported expense is less than the selected neutral facts available value.  *Id.* at 4–5.

Petitioners' methodology would raise Navigator's dumping margin from that calculated

in the Remand Results.  *See id.* at 5.  Petitioners had the opportunity to present this

argument to Commerce and failed to do so.  Accordingly, Petitioners failed to exhaust

their administrative remedies.  *See, e.g.*, *Boomerang*, 856 F.3d at 913 (foreclosing

consideration of an argument when the proponent had the information, opportunity, and

incentive to present it to the agency).

---

[6] There are other exceptions to the exhaustion requirement, including futility, an intervening court decision, pure questions of law, or when plaintiff had no reason to believe the agency would not follow established precedent.  *See Luoyang Bearing Factory v. United States*, 26 CIT 1156, 1186 n.26, 240 F. Supp. 2d 1268, 1297 n.26 (2002) (collecting cases).  Those exceptions are not relevant here.

Petitioners argue that their failure to suggest any alternative neutral facts available methodology or value to Commerce should be excused because, in the Draft Results, Commerce abandoned its reliance on adverse facts available and, thus, Petitioners' comments on the Draft Results pressed "Commerce to return to its previous position." Pet'rs' Opp'n Cmts. at 5. Petitioners' "excuse" does not relieve their failure to raise the instant challenge before Commerce in the alternative.

Petitioners also argue that they "did propose actual selections, with the specific goal of avoiding reducing reported costs, i.e., the same concern that remains now." *Id*. However, the only alternative selection that Petitioners proposed was "the highest value reported in USBROK2U" (and an alternative in case the highest value was considered aberrational), which they encouraged Commerce to use "as appropriate adverse facts available, as was done in the original *Final Results*." Pet'rs' Draft Cmts. at 7. That the "same concern" motivated Petitioners' proposed AFA value in its comments on the Draft Results and now motivates Petitioners' current challenge to Commerce's methodology, Pet'rs' Opp'n Cmts. at 5, is irrelevant. "Arguments must be presented *in toto* for this entire judicial review process to work sensibly*." Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, 41 CIT ___, ___, 277 F. Supp. 3d 1346, 1353 (2017) (exhaustion is required when the plaintiff failed to fully apprise Commerce of its arguments).

Accordingly, Petitioners failed to exhaust their argument before Commerce and no exception applies to excuse that failure.

## II.  Petitioners' Argument Also Fails on its Merits

Even if an exception applied to excuse Petitioners' failure to exhaust their administrative remedies, Petitioners' argument that the weighted-average value should be applied only to transactions for which Navigator reported expenses that were less than the weighted-average value would, nevertheless, fail on its merits.  *See* Pet'rs' Opp'n Cmts. at 4.  As discussed below, Commerce has provided a rational explanation for its uniform substitution of its neutral facts available value to all transactions for allocated U.S. brokerage and handling expenses; thus, Petitioners' argument lacks merit.

First, unless all the values are identical, the calculation of a weighted-average value based on thousands of transactions typically will result in a value that is higher or lower than each of the transaction-specific values.  Def.'s Reply Cmts. at 5.  Thus, substitution of the weighted-average value uniformly means that certain transactions are adjusted upwards while others are adjusted downwards.  *See id.* at 6.  As Commerce explained, that certain reported values were higher than the weighted-average value "does not negate the neutral nature of Commerce's facts available value."  Remand Results at 13.

Second, correcting Petitioners' perceived deficiency by applying the neutral value only to transactions with lower reported expenses would *increase* those expenses and increase the dumping margin.  *See* Pet'rs' Opp'n Cmts. at 5; Def.'s Reply Cmts. at 6. The court need not determine whether such an alternative methodology would best be considered "neutral" facts available or "adverse" facts available because such an

alternative was neither presented to nor selected by Commerce.  Commerce has broad discretion when selecting from among the facts otherwise available.  *See, e.g.*, *Acciai Speciali Terni S.P.A. v. United States*, 25 CIT 245, 264, 142 F. Supp. 2d 969, 989 (2001) ("[T]he ultimate choice of facts available is a matter largely reserved to Commerce's discretion.") (citation omitted).  Commerce addressed any distortion that arose from the reporting of zero or negative expenses by substituting a positive value for all such transactions.  *See* Pet'rs' Opp'n Cmts. at 3.  Petitioners fail to persuade the court that Commerce's only reasonable invocation of facts available was to limit its application to transactions for which the reported U.S. allocated brokerage and handling expense was lower than the selected facts available value.

In sum, Commerce supplied a reasoned explanation to support its use of neutral facts available, and its uniform application of a neutral weighted-average value is supported by substantial evidence and in accordance with the law.

## CONCLUSION

In accordance with the foregoing, Commerce's Remand Results will be sustained.  Judgment will enter accordingly.

/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: July 7, 2020
           New York, New York